NO. 13-2085

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**CASSENS TRANSPORT COMPANY**

*Appellant*

**vs.**

**JOYCE LEWIS, et al.**

*Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

### OPENING BRIEF

---

C. Edward Hartman, III (Bar No. 07716)
Brittany A. White (Bar No. 18719)
HARTMAN AND EGELI, LLP
116 Defense Highway, Suite 300
Annapolis, Maryland 21401-7047
(410) 266-3232 – Telephone
(410) 266-5561 – Facsimile
ed@hartmanegeli.com
brittany.white@hartmanegeli.com

*Counsel for Appellant*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-2085          Caption: In re Cassens Transport Company, Appellant

Pursuant to FRAP 26.1 and Local Rule 26.1,

Cassens Transport Company
(name of party/amicus)


who is _____ appellant _____, makes the following disclosure:
         (appellant/appellee/amicus)


1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                           ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:
      Cassens Corporation


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                               ☐ YES ☑ NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____09/06/2013_____

Counsel for: Cassens Transport Company

## CERTIFICATE OF SERVICE
****************************

I certify that on _September 6, 2013_ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Michael Paul Smith, Esquire
Lauren M. Dodrill, Esquire
Smith, Gildea & Schmidt, LLC
600 Washington Avenue, Suite 200
Towson, Maryland 21204

Amy Lorenz Moser
Armstrong Teasdale LLP
7700 Forsyth Blvd Ste. 1800
St Louis, Missouri 63105

_____
(signature)

_____09/06/2013_____
(date)

07/19/2012
SCC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................... i

STATEMENT OF JURISDICTION ........................................ 1

STATEMENT OF THE ISSUES .............................................. 3

    1.  Whether the District Court erred in denying Cassens' Motion to Quash Subpoena in violation of the 100-mile limit rule in Federal Rule of Civil Procedure 45(c)(3)(A)(ii) notwithstanding the fact that the Subpoena requires a Cassens' employee-driver to produce the Car Carrier more than seven hundred miles from its terminal in Illinois to a terminal in Maryland?

    2.  Whether the District Court erred in denying Cassens' Motion to Quash Subpoena in violation of Federal Rule of Civil Procedure 45(c)(3)(A)(iv) because compliance with the Subpoena and the Order, as established by the facts, imposes an undue burden on Cassens?

    3.  Whether the District Court erred in denying Cassens' Motion to Quash Subpoena on the basis that Federal Rule of Civil Procedure 34 does not contemplate the "test loading" simulation sought by the Appellees?

STATEMENT OF THE CASE ................................................. 4

STATEMENT OF FACTS ..................................................... 5

SUMMARY OF ARGUMENT ................................................ 10

STANDARD OF REVIEW .................................................... 13

ARGUMENT ........................................................................ 14

    I.    THE DISTRICT COURT'S DENIAL OF CASSENS' MOTION TO QUASH SUBPOENA SHOULD BE REVERSED BECAUSE THE 100-MILE LIMIT RULE APPLIES TO THESE FACTS AND THE SUBPOENA VIOLATES FEDERAL RULE OF CIVIL PROCEDURE 45(c)(3)(A)(ii). ........................................ 14

II. THE DISTRICT COURT'S DENIAL OF CASSENS'
MOTION TO QUASH SUBPOENA SHOULD BE REVERSED
BECAUSE COMPLIANCE WITH THE SUBPOENA,
ABSENT ANY REASONABLE CONDITIONS, IMPOSES
AN UNDUE BURDEN UPON CASSENS IN VIOLATION
OF FEDERAL RULE OF CIVIL PROCEDURE
45(c)(3)(A)(iv) AND RULE 26(b)(2)(C).                          19

    A. Federal Rule of Civil Procedure 45(c)(3)(A)(ii) and Rule
26(b)(2)(C) mandates the District Court to Quash the
Subpoena Upon a Showing of Undue Burden On a
Nonparty                                                      20

III. THE DISTRICT COURT'S ORDER MUST BE REVERSED
ON THE BASIS THAT THE COURT ERRED WHEN IT
DENIED CASSENS' MOTION TO QUASH SUBPOENA
AND REFUSED TO PROHIBIT THE "TEST LOADING"
SIMULATION WHEN SUCH TESTING IS NOT
CONTEMPLATED BY FEDERAL RULE OF CIVIL
PROCEDURE 34.                                                 28

CONCLUSION                                                    30

REQUEST FOR ORAL ARGUMENT                                     31

CERTIFICATE OF COMPLIANCE                                     32

CERTIFICATE OF SERVICE                                        33

ADDENDUM (UNREPORTED AUTHORITIES)

# TABLE OF AUTHORITIES

## Cases

Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.,
 262 F.R.D. 293 (S.D.N.Y. 2009).                                    15


BNLFood Investments Ltd. Sarl v. Martek Biosciences Corp.,
 Case No. WDQ-11-0446, 2012 U.S. Dist. LEXIS 104941
 (D. Md. 2012).                                                     15


Church of Scientology of Ca. v. United States, 506 U.S. 9 (1992).    2


In re: Air Crash Disaster at Sioux City, Iowa, on July 19, 1989,
 Nos. MDL-817, 1991 U.S. Dist. LEXIS 10372
 (N.D. Ill. July 26, 1991).                                          29


In re: Automotive Refinishing Paint Antitrust Litigation,
 229 F.R.D. 482 (E.D. Penn. 2005).                          20, 25, 26


In re Edelman, 295 F.3d 171 (2d. Cir. 2002).                         16


In re Hanger Orthopedic Group, Inc., 418 F. Supp. 2d 164
 (E.D.N.Y. 2006).                                                    15


In re subpoena of American Nurses Association
 (Gordon, et al. v. Kaleida Health, et al. No. 08-CV-0378
 (W.D.N.Y.)), 290 F.R.D. 60 (D. Md. 2013).                          20

i

<u>In the Matter of the Application for an Order Quashing Deposition
Subpoenas, dated July 16, 2002, served upon Takao Shida,
Takao Saski, and Shuya Kojima</u>, Misc. No. M*-85,
1:02CV00054 (M.D.N.C.), 2002 U.S. Dist. LEXIS 14928
(S.D.N.Y. 2002).                                                                             16


<u>Kostelecky v. NL Acme Tool/NL Industries, Inc.</u>,
837 F.2d 828 (8th Cir. 1988).                                                    24

<u>M'Baye v. New Jersey Sports Production, Inc.</u>, 246 F.R.D. 205
(S.D. N.Y. 2007).                                                                         15

<u>United States v. Under Seal (In re Grand Jury Subpoena)</u>,
646 F.3d 159 (4th Cir. 2011).                                               13

**<u>Statutes and Rules</u>**

28 U.S.C. § 1291.                                                                                1

Fed. R. Civ. Proc. 26(b)(2)(C).                          3, 4, 11, 19,  20, 23

Fed. R. Civ. Proc. 34.                                        3, 4, 10, 12, 28, 29

Fed. R. Civ. Proc. 45(a)(3).                                                         1

Fed. R. Civ. Proc. 45(c)(3)(A)(ii).          2, 3, 4, 6, 11, 14, 15, 18, 19, 20, 23

Fed. R. Civ. Proc. 45(c)(3)(A)(iv).                           3, 4, 11, 19, 20

Fed. R. Civ. Proc. 45(e).                                                            2

## STATEMENT OF JURISDICTION

Cassens Transport Company (hereinafter referred to as "Cassens"), the Appellant, is not a party in the underlying litigation pending in the United States District Court for the District of Maryland (hereinafter referred to as the "District Court"). The underlying case involves a dispute between the Appellees, Joyce Lewis, Scott Lewis, and Tracey Chambers, the surviving family members of the decedent, Robert R. Lewis, who suffered a fatal fall from a car carrier (hereinafter referred to as the "Car Carrier"), and the Defendant, Cottrell, Inc., who designed and manufactured the allegedly defective Car Carrier. (JA 1-3, JA 14-15).

On June 3, 2013, the District Court issued a subpoena (hereinafter referred to as the "Subpoena") against Cassens, pursuant to Federal Rule of Civil Procedure 45(a)(3), requiring Cassens to produce the Car Carrier for production and "test loading" in Maryland. (JA 62). Cassens filed a Motion to Quash Subpoena on June 18, 2013. (JA 67-97). The Honorable William Nickerson (hereinafter referred to as "Judge Nickerson") entered an Opinion and Order denying Cassens' Motion to Quash on July 29, 2013. (JA 176-179).

The Fourth Circuit has jurisdiction over this appeal on two bases. First, the July 29, 2013 Order (hereinafter referred to as the "Order") was a final judgment as to Cassens pursuant to 28 U.S.C. § 1291. Cassens has no other matter before the District Court and has no other recourse for challenging the Order. Pursuant to

1

Federal Rule of Civil Procedure 45(e), the District Court cannot hold Cassens in contempt for failure to obey the Subpoena and the Order, because the Subpoena requires a Cassens' employee-driver to travel more than seven hundred (700) miles from his assigned terminal in Illinois to produce the Car Carrier, in violation of the 100- mile limit rule set forth in Federal Rule of Civil Procedure 45(c)(3)(A)(ii). (JA 62, JA 72, JA 83).

Second, the Fourth Circuit has jurisdiction over this appeal pursuant to a well-established exception to the finality rule. A disinterested third party subject to a discovery order can immediately appeal a decision entered by the District Court denying a motion to quash subpoena. <u>Church of Scientology of Ca. v. United States</u>, 506 U.S. 9, 18, n. 11 (1992). The underlying litigation is between the decedent's surviving spouse and children, and the manufacturer of the Car Carrier. Cassens has no stake in the outcome of the litigation and has no involvement in the litigation other than as a subpoenaed party. The disinterested third party exception applies to Cassens, and the Subpoena and the Order directed at Cassens is treated as an immediately appealable final order.

On August 28, 2013, Cassens timely filed its Notice of Appeal with the District Court. (JA 202).

## STATEMENT OF THE ISSUES

Cassens seeks to challenge the District Court's denial of its Motion to Quash Subpoena and the Order requiring Cassens to produce the Car Carrier at a terminal location in Maryland for inspection and "test loading." The questions presented are:

1. Whether the District Court erred in denying Cassens' Motion to Quash Subpoena in violation of the 100-mile limit rule in Federal Rule of Civil Procedure 45(c)(3)(A)(ii) notwithstanding the fact that the Subpoena requires a Cassens' employee-driver to produce the Car Carrier more than seven hundred miles from its terminal in Illinois to a terminal in Maryland?

2. Whether the District Court erred in denying Cassens' Motion to Quash Subpoena in violation of Federal Rule of Civil Procedure 45(c)(3)(A)(iv) and Rule 26(b)(2)(C) because compliance with the Subpoena and the Order, as established by the facts, imposes an undue burden on Cassens?

3. Whether the District Court erred in denying Cassens' Motion to Quash Subpoena on the basis that Federal Rule of Civil Procedure 34 does not contemplate the "test loading" simulation sought by the Appellees?

3

## STATEMENT OF THE CASE

Joyce Lewis, individually and as personal representative of the Estate of Robert R. Lewis, Scott Lewis, and Tracey Chambers (hereinafter referred to as the "Appellees") filed a products liability, negligence, and breach of warranty claim against Cottrell, Inc., the manufacturer of the Car Carrier owned by Cassens. Cassens is not a party to the underlying litigation.

Cassens is a subpoenaed party in the underlying products liability case pending in the District Court. The District Court issued a subpoena, at the Appellees' request, requiring Cassens to produce the Car Carrier in Maryland, to property not owned by Cassens, for inspection and test loading. (JA 62, JA 192, JA 194-195).

Cassens filed a Motion to Quash Subpoena on the basis that the Subpoena violates Federal Rules of Civil Procedure 45(c)(3)(A)(ii) and (iv), and Rule 26(b)(2)(C), and the "test loading" simulation proposed by the Appellees is not contemplated by Federal Rule of Civil Procedure 34. (JA 67-68, JA 72-77, JA 156-158). Judge Nickerson entered the Order on July 29, 2013 denying Cassens' Motion to Quash Subpoena and requiring production, inspection, and "test loading" of the Car Carrier without modification of the requirements of the Subpoena. (JA 176-179).

4

Cassens noted this appeal on August 28, 2013. (JA 202).

## STATEMENT OF FACTS

### *Originating Case, the Subpoena and the Order Issued by the District Court*

The Appellees filed a products liability claim against Cottrell, Inc. alleging that the Car Carrier contains a dangerous defective design, and that this defect caused the decedent, Robert R. Lewis, to suffer a fatal fall while loading and unloading vehicles onto the Car Carrier. (JA 14-15, JA 98-99).

On June 3, 2013, the United States District Court for the District of Maryland issued the Subpoena, at the request of the Appellees, to require Cassens to produce the Car Carrier, identified as Cottrell Model 2007 C-7512 XC, Carrier No. 77234, Cab No. 77233, VIN No. 5E0AC14447G178218, at "8459 Dorsey Run Road in Jessup/Annapolis Junction, Maryland 20794" and to "permit test loading and inspection of said car carrier" on June 25, 2013 at 12:00 p.m. (JA 62-65).

The Car Carrier has been and is presently located in Aurora, Illinois, more than seven hundred miles from the terminal where Appellees seek to conduct inspection and "test loading." (JA 69-70, JA 83, JA 85). The Car Carrier is dispatched from the Aurora terminal and transports vehicles within a 200-mile radius of Aurora, Illinois. (JA 83). The Car Carrier does not transport vehicles to Maryland. (JA 72, JA 83-84). Under the terms of the Subpoena, Cassens must

remove the Car Carrier from service for up to five days to allow the Appellees to conduct a "test loading" simulation using the Car Carrier, which the Appellees allege contains a dangerous defective design.

The Subpoena further requires Cassens to permit entry onto the "terminal located at 8459 Dorsey Run Road in Jessup/Annapolis Junction, Maryland 20794" for inspection of premises "to include test loading the car carrier." (JA 62). The terminal premises known as 8459 Dorsey Run Road in Jessup/Annapolis Junction, Maryland 20794 and identified in the subpoena is not owned by Cassens, and Cassens does not have any authority to allow third-party testing to occur on the property. (JA 192, JA 194-195).

On June 18, 2013, Cassens filed a Motion to Quash Subpoena. (JA 67-97). On July 29, 2013, Judge Nickerson denied Cassens' Motion to Quash Subpoena. (JA 176-179). The District Court refused to quash the Subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(ii) and held that the 100-mile limit rule did not apply because Cassens "regularly transacts business in and around Maryland" and Cassens, not the Car Carrier, is the subject of the Subpoena. (JA 177-178). The District Court further held the Subpoena as issued does not impose an undue burden upon Cassens because the Car Carrier is the carrier from which the decedent allegedly suffered a fatal fall in 2008, the Defendant and manufacturer of the Car Carrier represented that it does not have a carrier of the

6

same model for production and inspection, and that examination of the Car Carrier may be of more assistance to the jury than a different car carrier. (JA 178). The District Court's Order did not analyze the substantial financial burden imposed upon Cassens and Cassens' liability and safety concerns surrounding the Appellees' request for an unprecedented and dangerous "test loading" simulation using the Car Carrier. (JA 176-179).

The Order does not require Appellees to reimburse Cassens for the substantial cost to produce the Car Carrier more than seven hundred miles away. (JA 176-179). The Order requires Cassens to produce the Car Carrier without requiring the Appellees to produce proof of adequate liability insurance in the event of personal injury or property damage. (JA 176-180, JA 188). The Order does not require the Appellees to specifically define "test loading," nor does it require any level of expertise by the Appellees. (JA 176-179, JA 193, JA 203-204).

On August 5, 2013, Cassens, through its Counsel, prepared and filed correspondence to Judge Nickerson requesting that the Court schedule a chamber's conference for "the Plaintiffs and Cassens Transport to set forth the conditions necessary [for Cassens] to satisfy the Court's Order." (JA 180-181). In response to Cassens' request, Judge Nickerson required the parties to first make attempts to agree on reasonable conditions that would resolve Cassens' liability, safety, financial, and other related concerns with production and inspection of the Car

Carrier before seeking relief from the District Court. The parties, despite good faith attempts, could not agree on conditions of production and inspection. (JA 188-189).

On August 19, 2013 and August 23, 2013, Cassens informed Judge Nickerson about its concerns regarding the qualifications of the Appellees' expert witness, the inability of the Appellees to provide adequate insurance liability protection, ownership of the terminal premises, and location of production. (JA 188-189, JA 192-200). Cassens made a second request for a chamber's conference and further requested that the Court allow Cassens the right to file a Motion for Reconsideration of the Court's Order dated July 29, 2013. (JA 189) (stating, "[f]urther, I hereby request the right to file a Motion for Reconsideration as to the Order, considering the manner in which compliance must now occur, given the plaintiff's limitations. The purpose of the Motion for Reconsideration is to address the fact that given good faith negotiations by the parties, the Order has now become an affirmative injunction, and the standard for issuance thereof was not met.").

Judge Nickerson scheduled a chamber's conference to address the issues surrounding Cassens' inability to comply with the Subpoena. (JA 201). On August 26, 2013, the Counsel for the Appellant and Counsel for the Appellees appeared by telephone before Judge Nickerson to discuss the inability of compliance by

8

Cassens of the Subpoena and the Order under the conditions presented. Judge Nickerson stated that the production and "test loading" simulation would occur, and thereby, indicated that the Court would not reconsider its decision denying the Motion to Quash Subpoena as requested by Cassens. During the chamber's conference, Counsel for the Appellees agreed to undertake efforts with their expert witnesses to arrange for production of the Car Carrier in Illinois, promptly provide Cassens with specific information regarding the qualifications of their expert who would conduct the "test loading" simulation, promptly provide a detailed proposal as to what the "test loading" simulation would specifically entail, and promptly provide written proof of adequate insurance liability protection to Cassens. (JA 203-204).

### *Resolution of Issues Surrounding the Subpoena and the Order*

Cassens attempted to resolve the above-stated issues with the Appellees. At the time Cassens filed this Appeal, Appellees were unable to satisfy the conditions discussed by the parties. (JA 203-204). Appellees did not agree to production of the Car Carrier in Illinois, as discussed by the parties and Judge Nickerson during a chamber's conference. (JA 203-204). Appellees did not provide any proof of the existence of a satisfactory insurance policy, as discussed by the parties and Judge Nickerson during the chamber's conference. Appellees have made suggestions, but

have not presented any written assurances that they will agree to a reasonable waiver of liability and hold harmless agreement.

The Appellees further stated that they would provide a detailed proposal of the "test loading" simulation they intend to conduct, specific information regarding the qualifications of the Appellees' expert from Maryland who would conduct the "test loading," and work towards arranging for their expert to travel to Illinois. (JA 205-207). In letter correspondence to Judge Nickerson dated August 30, 2013, the Appellees stated that they are in the process of working with their expert to arrange for production and inspection in Illinois and stated, "as soon as Plaintiffs obtain additional information regarding the test load and Mr. Culbertson (Appellees' second expert), they will follow-up with Mr. Hartman accordingly." (JA 206). Despite Appellees' promise to follow-up with Counsel for Cassens, Appellees did not follow-up.

## SUMMARY OF THE ARGUMENT

Based on the evidence presented to the District Court establishing that compliance with the Subpoena violates the 100-mile limit rule and imposes an undue burden upon Cassens, and that compelling a "test loading" simulation using the Car Carrier is not contemplated by Federal Rule of Civil Procedure 34, the District Court erred when it denied Cassens' Motion to Quash Subpoena. Cassens

respectfully requests that his Honorable Court reverse the District Court's denial of its Motion to Quash Subpoena.

Cassens raises three separate issues on appeal:

First, the 100-mile limit rule applies to these facts and the Subpoena violates Federal Rule of Civil Procedure 45(c)(3)(A)(ii). Based on the location of the Car Carrier more than seven hundred miles from the location of production and the fact that the Subpoena requires Cassens' employee-driver to cease operations and drive the Car Carrier to a terminal in Maryland, the District Court erred when it dismissed the 100-mile limit rule and held that the facts of this case did not warrant application of the rule. The language of Rule 45(c)(3)(A)(ii) is mandatory and upon a finding that a non-party must travel more than seven hundred miles to produce a tangible item, the Court must quash or modify the subpoena.

Second, compliance with the Subpoena, absent any reasonable conditions, imposes an undue burden upon Cassens in violation of Federal Rule of Civil Procedure 45(c)(3)(A)(iv) and Rule 26(b)(2)(C). Cassens presented the following facts to establish that compliance with the Subpoena amounts to an undue burden: Cassens must produce the Car Carrier at a location not owned by Cassens. The Appellees have not produced proof of adequate insurance liability protection. The Appellees propose to conduct a "test loading" simulation; however, Cassens has no

11

knowledge of what the "test loading" simulation specifically entails. The Appellees allege that the Car Carrier contains a dangerous defect and demands that Cassens permit their expert witness to conduct a test load, without providing Cassens with detailed information regarding the qualifications of their expert witness. Production of the Car Carrier in Maryland will result in substantial financial harm to Cassens. Notwithstanding the evidence presented, the District Court erroneously held that Cassens is not unduly burdened by the Subpoena and denied Cassens' Motion to Quash Subpoena. The District Court's Order must be reversed based on the overwhelming evidence of an undue burden on Cassens that outweighed the Appellees' alleged need for this Car Carrier.

Third, the District Court erred when it refused to quash the portion of the Subpoena requiring the "test loading" simulation and ordered Cassens to produce the Car Carrier for "test loading" by the Appellees. Federal Rule of Civil Procedure 34 does not contemplate testing on complex machinery that would potentially subject the property to substantial damage, cause serious injury to the persons involved, and subject the subpoenaed party to liability.

Based on the foregoing reasons, the District Court's denial of Cassens' Motion to Quash Subpoena was erroneous and amounted to an abuse of discretion.

12

## STANDARD OF REVIEW

The review of the District Court's Order denying Cassens' Motion to Quash Subpoena is whether the Order constitutes an abuse of discretion. United States v. Under Seal (In re Grand Jury Subpoena), 646 F.3d 159, 164 (4th Cir. 2011). Under the abuse of discretion standard, "the district court's rulings of law are reviewed de novo and its factual findings are reviewed under the clear-error standard." *See id.*

The Court must determine three separate issues on appeal. First, this Court must determine whether the District Court abused its discretion when it failed to invoke the 100-mile limit rule requiring the Court to quash the Subpoena. Second, this Court must determine whether the District Court abused its discretion when it found that compliance with the Subpoena did not amount to an undue burden upon Cassens. Third, the Court must determine whether the District Court abused its discretion when it ordered Cassens to permit the Appellees to conduct a "test loading" simulation using the Car Carrier.

# ARGUMENT

## I. THE DISTRICT COURT'S DENIAL OF CASSENS' MOTION TO QUASH SUBPOENA SHOULD BE REVERSED BECAUSE THE 100-MILE LIMIT RULE APPLIES TO THESE FACTS AND THE SUBPOENA VIOLATES FEDERAL RULE OF CIVIL PROCEDURE 45(c)(3)(A)(ii).

Upon review of Cassens' Motion to Quash Subpoena, the District Court refused to quash the Subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(ii) and held that the 100-mile limit rule did not apply because Cassens "regularly transacts business in and around Maryland" and Cassens, not the Car Carrier, is the subject of the Subpoena. (JA 177-178). Based on the location of the Car Carrier more than seven hundred miles from the location of production and the fact that the Subpoena requires Cassens' employee-driver to cease operations and drive the Car Carrier to a terminal in Maryland, the District Court erred when it dismissed the 100-mile limit rule and held that the facts of this case did not warrant application of the rule. (JA 62, JA 69-70, JA 72).

The language of Rule 45(c)(3)(A)(ii) is mandatory; the District Court must quash a subpoena requiring the subpoenaed party to travel beyond the 100 mile limit. Accordingly, there is no discretion. The only question is factual: does the Subpoena require "a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed or regularly transacts business in person"? Fed. R. Civ. Proc. 45(c)(3)(A)(ii). (emphasis added).

14

The Rule provides, "on timely motion, the issuing court <u>must</u> quash or modify a subpoena that: (ii) requires <u>a person</u> who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business <u>in person</u>." (emphasis added). Rule 45(c)(3)(A) "<u>mandates</u> that a subpoena be quashed or modified if it...requires extensive travel." (emphasis added). <u>BNLFood Investments Ltd. Sarl v. Martek Biosciences Corp.</u>, Case No. WDQ-11-0446, 2012 U.S. Dist. LEXIS 104941, *9, n. 6 (D. Md. 2012). The subpoena power, under Rule 45, limits the district court's power to compel a nonparty to travel to 100 miles. <u>In re Hanger Orthopedic Group, Inc.</u>, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006).

Subpoenas requiring individual employees, who are not corporate officers nor parties to the case, and who reside, work, or regularly transact business in person outside of the geographical scope of Rule 45 must be quashed. *See* <u>Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.</u>, 262 F.R.D. 293, 302-303 (S.D.N.Y. 2009) (holding that the only exception to Rule 45's territorial limitations is for parties and officers of parties, and "individual employees who are not corporate officers and who reside outside the geographic scope of Rule 45, must be quashed"). Rule 45(c)(3)(A)(ii) "specifies that one must be doing business "in person" in a given location." <u>M'Baye v. New Jersey Sports Production, Inc.</u>, 246 F.R.D. 205, 207 (S.D. N.Y. 2007) (finding that where the subpoenaed person

15

conducted business in person on previous occasions in New York, the subpoenaed person's infrequent visits to New York do not qualify as regularly transacting business, and as a result, the motion to quash subpoena was granted and Plaintiff's motion for contempt denied).

The purpose of the "territorial limitation "is to protect [non-parties] from being subjected to excessive discovery burdens in litigation in which they have little or no interest."" In re Edelman, 295 F.3d 171, 178 (2d. Cir. 2002). Upon a showing that the Subpoena exceeds the territorial limitation, "the court cannot simply let such a subpoena stand as issued." In the Matter of the Application for an Order Quashing Deposition Subpoenas, dated July 16, 2002, served upon Takao Shida, Takao Saski, and Shuya Kojima, Misc. No. M*-85, 1:02CV00054 (M.D.N.C.), 2002 U.S. Dist. LEXIS 14928, * 9 (S.D.N.Y. 2002).

The 100-mile limit rule applies to the facts of this case. The facts set forth in Cassens' Motion to Quash Subpoena supporting application of the 100-mile limit rule were as follows: It is undisputed that Cassens and the employee-driver assigned to the Car Carrier are not parties or officers of any parties in this action. Cassens operates a car hauling business and assigns drivers and car carriers to particular territories based on the car hauling demand. (JA 69-70, JA 83-85).

The Car Carrier has been and is presently located in Aurora, Illinois, more than seven hundred miles from the terminal where Appellees seek to conduct inspection and "test loading." (JA 69-70, JA 83-85). The Car Carrier is dispatched from the Aurora terminal and transports vehicles within a 200-mile radius of Aurora, Illinois. (JA 83). The Car Carrier does not transport vehicles to Maryland. (JA 69-70, JA 83-84). An employee-driver of Cassens is assigned to the Car Carrier and makes two to three shipments per day using the Car Carrier. (JA 73-74, JA 83-84, JA 188). The Subpoena requires Cassens to produce the Car Carrier at a terminal location identified as "8459 Dorsey Run Road in Jessup/Annapolis Junction, Maryland 20794." (JA 62). The production location is more than seven hundred miles from where the Car Carrier and its driver are stationed. While the Subpoena explicitly requires production of the Car Carrier only, as a practical matter, the employee-driver assigned to the Car Carrier is a subpoenaed person because he is assigned to the Car Carrier and operates the Car Carrier on a daily basis. If a different driver were assigned for this delivery, he or she would still have to travel seven hundred miles.

The District Court based its dismissal of Cassens' argument that the subpoena must be quashed pursuant to the 100-mile limit rule on the fact that Cassens "regularly transacts business in and around Maryland" and the Car Carrier, not Cassens, is subpoenaed. (JA 177). First, Cassens does not dispute that

it transacts business in Maryland; however, that fact is irrelevant to the analysis. The Subpoena does not require Cassens to remove a Car Carrier from operation within 100 miles of the location of production. The Subpoena requires "a person not a party," the Cassens' employee-driver, to remove the Car Carrier from operation for up to five days and drive the Car Carrier more than seven hundred miles to the production location. Second, in order to comply with the Subpoena, a person not a party must drive the Car Carrier to a place "more than 100 miles from where that person resides, is employed, or regularly transacts business in person." Fed. R. Civ. Proc. 45(c)(3)(A)(ii) (emphasis added). This is not a document or small item that can be mailed or shipped; it must be driven by someone who is licensed and insured.

The District Court's broad and expansive interpretation of Rule 45(c)(3)(A)(ii) would allow any party to subpoena a non-party entity in the business of hauling and transporting cargo throughout several states and require that entity to produce a particular vehicle, used in the regular course of business, at distances of seven hundred miles or more. Rule 45(c)(3)(A)(ii) does not contemplate this type of production, particularly given the non-party status of the subpoenaed person. Based on the facts of this case and the requirement that Cassens' employee-driver produce the Car Carrier at a location more than seven hundred miles away, the District Court erred and abused its discretion when it held

18

that Rule 45(c)(3)(A)(ii) is an improper ground for quashing the Subpoena. The mandatory language of Rule 45(c)(3)(A)(ii) required the District Court to quash the instant Subpoena.

Based on the foregoing reasons, Cassens respectfully requests that the Fourth Circuit reverse the District Court's denial of Cassens' Motion to Quash Subpoena on the basis that Rule 45(c)(3)(A)(ii) mandates quashing of the Subpoena.

## II. THE DISTRICT COURT'S DENIAL OF CASSENS' MOTION TO QUASH SUBPOENA SHOULD BE REVERSED BECAUSE COMPLIANCE WITH THE SUBPOENA, ABSENT ANY REASONABLE CONDITIONS, IMPOSES AN UNDUE BURDEN UPON CASSENS IN VIOLATION OF FEDERAL RULE OF CIVIL PROCEDURE 45(c)(3)(A)(iv) AND RULE 26(b)(2)(C).

In addition to failing to apply the 100-mile limit rule and quash the Subpoena on such basis, the District Court further erred by failing to find that compliance with the Subpoena, absent any reasonable conditions, imposes an undue burden upon Cassens and should be quashed or modified accordingly. The District Court's denial of the Motion to Quash Subpoena, and Order requiring compliance was an abuse of discretion and should be reversed.

**A. Federal Rule of Civil Procedure 45(c)(3)(A)(iv) and Rule 26(b)(2)(C) mandates the District Court to Quash the Subpoena Upon a Showing of Undue Burden On a Nonparty.**

Similar to the language of Federal Rule of Civil Procedure 45(c)(3)(A)(ii), Rule 45(c)(3)(A)(iv)  is mandatory and requires  the District Court to quash a subpoena imposing an undue burden upon a subpoenaed party. The Rule provides, "on timely motion, the issuing court <u>must </u>quash or modify a subpoena that: (iv) subjects a person to an undue burden." (emphasis added). Federal Rule of Civil Procedure 26(b)(2)(C) further requires the issuing court to protect parties from subpoenas when "the burden or expense of the proposed discovery outweighs its likely benefit" or the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive."

Furthermore, non-parties who are subpoenaed or compelled to produce tangible items deserve heightened protection, and the Court must give special weight to the burden imposed on subpoenaed non-parties and protect them "from significant expenses resulting from compliance."  <u>In re subpoena of American Nurses Association (Gordon, et al. v. Kaleida Health, et al. No. 08-CV-0378 (W.D.N.Y.))</u>, 290 F.R.D. 60, 75 (D. Md. 2013); <u>In re: Automotive Refinishing Paint Antitrust Litigation</u>, 229 F.R.D. 482, 496 (E.D. Penn. 2005) (holding that the discovery request must be modified to impose several limitations and restrictions on the request for production of documents to alleviate the financial burden on the

compelled non-party and requiring the Plaintiffs to compensate the non-party for the costs of production").

Cassens objected to the Subpoena on the grounds that compliance is unduly burdensome and onerous, particularly given the fact that Cassens is not a party to the case. (JA 67-97). Cassens presented sufficient evidence in its Motion to Quash Subpoena, at the chamber's conference, and in correspondence to Judge Nickerson to establish the imposition of an undue burden as a result of compliance with the Subpoena and that such burden outweighed the benefit of requiring a dangerous and unprecedented "test loading" simulation. Cassens presented the following facts to the District Court to establish the unduly burdensome and onerous nature of the Subpoena:

First, the Subpoena requires Cassens to produce the Car Carrier at a location not owned by Cassens and Cassens does not have any authority to permit "test loading" or any other simulation, notwithstanding a dangerous simulation, on the premises. (JA 192, JA 194-195).

Second, Cassens has no assurance that it will be protected from liability in the event of injury to person or damage to property resulting from the production, inspection, and "test loading" of the Car Carrier. (JA 188, 192-193). Cassens' liability concerns hold merit considering the Appellees' own claim that the Car

Carrier contains a dangerous design defect that allegedly caused one fatality. It is certainly to be expected that the Appellees' testing will be intended to show that the Car Carrier is dangerous. The Appellees have not produced written proof of adequate insurance liability protection.

Third, Cassens has no clear understanding of what the Appellees intend to do when in possession of the Car Carrier. (JA 203). The Appellees propose to conduct a "test loading" simulation; however, Cassens has no knowledge of what the "test loading" simulation specifically entails. (JA 203). Cassens has a right to know what a party intends to do with its property, especially when the property involved is a complex piece of machinery. (JA 192, JA 196-200).

Fourth, Cassens does not have specific information regarding the qualifications of the expert witness the Appellees intend to have conduct the inspection and "test loading" simulation. (JA 192-193, JA 203). The property involved is a complex piece of machinery operated only by individuals with specialized training for six to eight weeks at a minimum. (JA 192, JA 196-200).

Fifth, production of the Car Carrier in Maryland will result in substantial financial harm to Cassens. (JA 73-76, JA 83-84). The cost to produce the Car Carrier in Maryland, more than seven hundred miles from its assigned terminal, and remove it from operation for a period of up to five days will cost

approximately $12,000.00. (JA 73-76, JA 83-84).  The Car Carrier is subject to a tight delivery schedule, and, pursuant to contracts with its suppliers, Cassens must deliver cargo in a timely fashion. (JA 73-74, JA 83-84, JA 153-154, JA 180). Compliance with the Subpoena will result in potential breaches of contracts with Cassens' suppliers and have a detrimental effect on its business relationship with its suppliers and its business reputation within the car hauling industry. (JA 153-154). Although Cassens conducts business in Maryland, Cassens serves several territories, and the Car Carrier is assigned exclusively to the Illinois territory. Due to the current hauling demand and its contracts with suppliers, Cassens cannot simply re-assign this Car Carrier to the Maryland territory. (JA 73-74, JA 153-154).

Cassens presented sufficient evidence to substantiate its claim that compliance with the Subpoena imposes an undue burden. The Appellees admitted that use of this Car Carrier, even though similar car carriers are available for rent or lease, is merely preferable rather than essential. (JA 102, JA 150). The Appellees intend to rent similar vehicles to load onto the Car Carrier involved in the alleged incident, but insist on use of this Car Carrier for the "test loading" simulation. (JA 99, JA 150). Based on the evidence presented to establish the undue burden, Federal Rules of Civil Procedure 45(c)(3)(A)(ii) and 26(b)(2)(C) mandated that the District Court quash the Subpoena, or modify the Subpoena to

impose reasonable conditions that would allow Cassens to comply with the Subpoena and the Order. (JA 72-73, JA 180-181, JA 188-189, JA 192-193, JA 203-204).

In its Motion to Quash, Cassens explained that the facts of this case are akin to the facts in *Kostelecky v. NL Acme Tool/NL Industries, Inc.*, 837 F.2d 828, 833 (8th Cir. 1988) wherein the Eighth Circuit upheld a lower court's decision to quash a subpoena. In *Kostelecky*, the subpoena required the movant to produce equipment and tools similar to those used in the alleged occurrence. *Id.* at 832. The movant filed a motion to quash the subpoena on the basis that to produce such equipment and tools was "unduly burdensome and expensive" because "it was in the business of renting such tools to others engaged in oil work," and furthermore, similar tools were "made available for inspection and photographed..." *Id.*[1] The district court quashed the subpoena and on appeal, the Eighth Circuit affirmed the district court's decision. *Id.* at 833.

The Eighth Circuit found that the district court properly quashed a subpoena on the basis that compliance was "unreasonable or oppressive" because the movant established that the equipment sought for production was "rented to drillers on a daily basis" for a substantial value and the movant "would have been required to

---

[1] Plaintiffs previously inspected the Car Carrier on October 30, 2008, without a court order. Plaintiffs and their experts were permitted to photograph and climb onto the Car Carrier only.

transport the equipment." *Id.* at 833. The Eighth Circuit found that "in light of the cost and the fact that similar equipment had been made available for photographs and inspection," the district court properly quashed the subpoena. *Id.*

Cassens Transport, similar to the movant in *Kostelecky*, is in the business of hauling cars and heavily depends on the availability of this Car Carrier to conduct business. The Car Carrier is used daily and Cassens Transport is not in the position to remove the Car Carrier from service and transport it more than seven hundred miles.

The undue burden imposed upon Cassens is also similar to the burden imposed upon a non-party in the case of *In re: Automotive Refinishing Paint Antitrust Litigation* where the United States District Court for the Eastern District of Pennsylvania found that the undue burden warranted significant modification of the production request, reimbursement costs to be paid by the requesting party, and legal fees. Plaintiff sought to compel a non-party to produce numerous documents, electronic files and other records that were relevant to the litigation and "directly pertain[ed] to [Plaintiff's] antitrust claims against Defendants." In re: Automotive Refinishing Paint Antitrust Litigation, 229 F.R.D. 482, 496 (Dist. Penn. 2005). Compliance with the request would require the trade association to enter into contracts with information technology professionals, require assistance of one of

its own employees, and result in substantial costs incurred from compliance with the discovery requests. *Id.* at 495.

Based on the status of the subpoenaed party as a nonparty, the fact that the party had a limited staff and an employee would need to assist in production, and the substantial cost of compliance, the Court in *Automotive Refinishing* "impose[d] several limitations and restrictions on the Plaintiffs' request for production of documents," including reducing the document requests and requiring the Plaintiffs to obtain information directly from the automotive paint manufacturers, the Defendants in the case. *Id.* at 495-496 "To alleviate the financial burden" on the subpoenaed party, the Court further required the Plaintiffs to compensate the nonparty for the costs of production and further stated that "[a] nonparty's legal fees, especially where the work benefits the requesting party, have been considered a cost of compliance reimbursable."" *Id.* at 496. The Court explained that "nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."*Id.* at 496-497 (quoting *In re Letters Rogatory Issued by Nat'l Court of First Instance in Commercial Matters, 144 F.R.D. 272, 278 (E.D. Pa. 1992)*).

Cassens Transport, similar to the movant in *In re: Automotive Refinishing Paint Antitrust Litigation*, must remove the Car Carrier and its employee-driver

26

from the hauling circuit and require the employee to drive the Car Carrier more than seven hundred miles away for a substantial cost, including the potential breaches of contract with its suppliers, the cost to produce, and without adequate liability insurance coverage. Cassens has no control over the litigation and discovery and is forced to share in the Appellees' cost to litigate the underlying case.

Notwithstanding the facts clearly establishing an undue burden upon Cassens, the District Court denied its Motion to Quash Subpoena and did not impose reasonable conditions to diminish the resultant burden. (JA 176-181). Upon review of Cassens' Motion to Quash Subpoena, the District Court held the Subpoena as issued does not impose an undue burden upon Cassens because the Car Carrier is the carrier from which the decedent allegedly suffered a fatal fall, the Defendant and manufacturer of the Car Carrier represented that it does not have a carrier of the same model for production and inspection, and that examination of the Car Carrier may be of more assistance to the jury than a different car carrier. (JA 176-179). The District Court's Order did not analyze the substantial financial burden imposed upon Cassens and Cassens' liability and safety concerns surrounding the Appellees' request for an unprecedented and dangerous "test loading" simulation using the Car Carrier. (JA 176-179). The District Court did not give special consideration and weight to the status of Cassens as a non-party, and

27

more importantly, did not require the Appellees to reimburse Cassens for compliance or impose reasonable conditions to reduce the burden resulting from compliance. (JA 176-180).

Cassens reemphasized its inability to comply with the Subpoena at the chamber's conference and in correspondence to Judge Nickerson; however, the Court did not quash the subpoena or modify it to include reasonable conditions that would address Cassens' liability, safety and financial concerns. Judge Nickerson indicated that, while the Court acknowledged Cassens' concerns, the production, inspection, and "test loading" simulation would occur.

Weighing the burden to nonparty Cassens against the value of the information to the Appellees, considering that the use of the Car Carrier is preferable rather than necessary and similar car carriers are available for rent or lease, the District Court erred when it failed to find that the Subpoena resulted in an undue burden on Cassens. The District Court's Order must be reversed.

## III. THE DISTRICT COURT'S ORDER MUST BE REVERSED ON THE BASIS THAT THE COURT ERRED WHEN IT DENIED CASSENS' MOTION TO QUASH SUBPOENA AND REFUSED TO PROHIBIT THE "TEST LOADING" SIMULATION WHEN SUCH TESTING IS NOT CONTEMPLATED BY FEDERAL RULE OF CIVIL PROCEDURE 34.

As it pertains to the scope of inspection provided for in the Subpoena, Cassens objected to the District Court permitting the Appellees' use of the Car

Carrier for a "test loading" simulation during the course of the inspection. (JA 156-158). Cassens explained that the "testing" referred to in Federal Rule of Civil Procedure 34 does not include the "test loading" simulation contemplated by the Appellees. (JA 156-158). The District Court erred when it refused to quash the portion of the Subpoena requiring the "test loading" simulation and ordered Cassens to produce the Car Carrier for "test loading" by the Appellees.

Federal Rule of Civil Procedure 34 permits a party to "test" a designated object that is the subject of the Subpoena; however, contrary to the Appellees' assertions, Federal Rule of Civil Procedure 34 does not contemplate testing that would potentially subject the property to substantial damage, cause serious injury to the persons involved, and subject the subpoenaed party to liability. *See* In re: Air Crash Disaster at Sioux City, Iowa, on July 19, 1989, Nos. MDL-817, 1991 U.S. Dist. LEXIS 10372 (N.D. Ill. July 26, 1991) (denying a request to compel production of a particular aircraft on the basis that Rule 34 does not extend to testing that is unduly burdensome and may indeed prove to be dangerous).

Based on the dangerous nature of the "test loading" simulation and the inadequate insurance liability coverage, the District Court should have quashed the Subpoena on the basis that the "test loading" simulation was improper. The "test loading" simulation contemplated by the Appellees exceeds the scope of Rule 34 because it creates the risk of injury to person and damage to property, and exposes

29

Cassens to substantial liability without adequate liability protection. The danger of the "test loading" simulation is undisputed; the Appellees allege that the Car Carrier contains a dangerous defect. (JA 14-15, JA 98-99). While Cassens raised this objection in its Motion to Quash Subpoena, the District Court failed to respond to the argument in its Order and entered an Order requiring the production of the Car Carrier for "test loading." The District Court's refusal to quash the portion of the Subpoena requiring Cassens to make the Car Carrier available for a "test loading" simulation was erroneous and amounted to an abuse of discretion.

## CONCLUSION

Based on the foregoing reasons, Cassens respectfully requests that this Honorable Court find that the District Court erred when it denied Cassens' Motion to Quash Subpoena and reverse the District Court's July 29, 2013 Order, and quash the Subpoena.

## **REQUEST FOR ARGUMENT**

Cassens requests that this Court schedule this matter for oral argument.


Respectfully Submitted,

C. Edward Hartman, III (Bar No. 07716)
Brittany A. White (Bar No. 18719)
HARTMAN AND EGELI, LLP
116 Defense Highway, Suite 300
Annapolis, Maryland 21401-7047
(410) 266-3232
(410) 266-5561 (facsimile)
ed@hartmanegeli.com
Attorneys for Appellant

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-2085        Caption: Cassens Transport Company v. Joyce Lewis, et al.

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]  this brief contains ____6,626____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]  this brief has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
14 pt. font, Times New Roman _____ [*identify font size and type style*]; or

[ ]  this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) _____

Attorney for Cassens Transport Company ____

Dated: 10/15/13 _____

# CERTIFICATE OF SERVICE

I certify that on <u>October 15, 2013</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ray M. Shepard, Esquire
Smith, Gildea & Schmidt, LLC
600 Washington Avenue, Suite 200
Towson, Maryland 21201

_____
Signature

October 15, 2013
_____
Date

# ADDENDUM
## (Unreported Authorities)



**BNLFOOD INVESTMENTS LTD. SARL, Plaintiff, v. MARTEK BIOSCIENCES CORP., Defendant.**

**Case No. WDQ-11-0446**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

*2012 U.S. Dist. LEXIS 104941*

**July 27, 2012, Decided**
**July 27, 2012, Filed**

**SUBSEQUENT HISTORY:** Summary judgment granted by *BNLfood Inv. SARL v. Martek Biosciences Corp., 2013 U.S. Dist. LEXIS 46412 (D. Md., Mar. 28, 2013)*

**PRIOR HISTORY:** *BNLFood Invs. Ltd. SARL v. Martek Biosciences Corp., 2011 U.S. Dist. LEXIS 143588 (D. Md., Dec. 13, 2011)*

**COUNSEL:** [*1] For BNLfood Investment SARL, Plaintiff: Charles C Moore, Francis A Vasquez, Jr, White and Case LLP, Washington, DC; George L Paul, James Patrick Gagen, Rebecca Hilberman Farrington, PRO HAC VICE, Jaime M Crowe, White and Case LLP, Washington, DC.

For Martek Biosciences Corp., Defendant: Andrea William Trento, Mark D Gately, LEAD ATTORNEYS, Hogan Lovells US LLP, Baltimore, MD; Corey W Roush, John Robert Robertson, PRO HAC VICE, Hogan Lovells US LLP, Washington, DC.

For DSM Services USA Inc., DSM Nutritional Products Ltd, Richard Greubel, Movants: Constantine Dino Haloulos, Theodore McCullough, PRO HAC VICE, McCullough Ginsberg Montano, New York, NY; John C Ruff, R Thomas Radcliffe, Jr, DeHay and Elliston LLP, Baltimore, MD.

**JUDGES:** Stephanie A. Gallagher, United States Magistrate Judge.

**OPINION BY:** Stephanie A. Gallagher

**OPINION**

**MEMORANDUM AND ORDER**

On June 27, 2012, Plaintiff BNLfood Investments SARL ("BNLfood") filed a Motion to Compel Richard Greubel and DSM Nutritional Products Ltd. ("DNP Switzerland") to produce certain documents in this antitrust case against Defendant Martek Biosciences Corp. ("Martek"). [ECF No. 53]. The motion seeks enforcement of two subpoenas *duces tecum* ("the subpoenas") issued to Mr. Greubel [*2] and DNP Switzerland, both of whom are nonparties. [1] This case has been referred to me for the purposes of resolving discovery disputes. [ECF No. 44]. No hearing is deemed necessary. *Local Rule 105.6* (D. Md. 2011). For the reasons set forth herein, BNLfood's motion will be denied.

---

    1    BNLfood asserts that, following Martek's sale to DNP Switzerland's parent company, Martek's infant formula business is now managed by Mr. Greubel, who works in the offices of DNP Switzerland. However, Mr. Greubel and DNP Switzerland are not named defendants in this case.

---

On June 6, 2012, BNLfood issued the subpoenas using forms from this Court, the United States District Court for the District of Maryland. The subpoenas purported to require Mr. Greubel and DNP Switzerland to produce certain documents to BNLfood's counsel's office in Washington, D.C. Pl. Mot. Exh. 17-18. BNLfood's counsel served the subpoenas on Mr. Greubel at the conclusion of his deposition in Washington, D.C. on June 6, 2012. Pl. Mot. Exh. 19-20. On June 19, 2012, Mr. Greubel and DSM Services U.S.A., Inc. [2] sent letters to counsel for BNLfood stating, in relevant part, that the

subpoenas did not comport with *F.R.C.P. Rule 45.* Pl. Mot. Exh. [*3] 3-4. Counsel engaged in a telephonic meet and confer on June 25, 2012. *Loc. R. 104.7* Certification. On June 27, 2012, BNLfood filed this Motion to Compel. [ECF No. 53].

> 2   Although the precise relationship of DSM Services U.S.A., Inc. to either the defendant or the subpoenaed company is unclear, it is not material to the outcome of this dispute.

*Fed. R. Civ. P. 45(a)(2)(C)* states:

> A subpoena must issue as follows . . . for production or inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made.

Mr. Greubel and DSM Nutritional Products, LLC ("DNP LLC") oppose BNLfood's efforts to compel compliance. [3] They contend that because BNLfood's subpoenas were issued from this Court in Maryland, but require production of documents in Washington, D.C., the subpoenas are facially invalid. This Court agrees, because the subpoenas do not comply with the express mandate of *Rule 45(a)(2)(C).*

> 3   Although DNP LLC's standing to oppose enforcement of the subpoenas is also unclear, the identity of the opposing party is immaterial to this Court's reasoning.

BNLfood presents four arguments in defense of the subpoenas' validity. [*4] First, BNLfood suggests that the practice among the parties in the case has been to serve their discovery responses in Washington, D.C. *Fed. R. Civ. P. 34*, which governs requests for production, does not contain the same geographical limitations as *Rule 45*, which governs the issuance of subpoenas. Although Maryland and Washington, D.C. are geographically close, *Rule 45(a)(2)(C)* provides no exception for proximity. Moreover, while Mr. Greubel and DNP Switzerland are closely connected to Martek, they are technically nonparties to this litigation and could not be bound by the parties' informal practice.

Second, BNLfood complains that the geographic issue was not raised until after the close of discovery, which now precludes the reissuance of the subpoenas. However, the June 19, 2012 letters from Mr. Greubel and DSM Services U.S.A., Inc. state that each subpoena does "not comport with *FRCP Rule 45* and is therefore void-on-its-face." Pl. Mot. Exh. 3-4. BNLfood does not appear to have adequately explored an explanation for

that objection during the meet and confer with counsel on June 25, 2012. Because the discovery deadline was July 10, 2012, had the alleged non-compliance with *Rule 45* been [*5] discussed at the meet and confer, BNLfood would have had time to serve validly issued subpoenas. Moreover, this Court notes that BNLfood served the subpoenas approximately 34 days prior to the expiration of the discovery period. Discovery commenced at least six months earlier. Presumably, BNLfood waited to serve the subpoenas until Mr. Greubel's temporary presence in Washington, D.C. might arguably moot the need to comply with international service requirements. BNLfood's choice to delay service of the subpoenas has resulted in its current predicament. Had the subpoenas been issued at the start of the discovery period, BNLfood would have had ample time to serve revised subpoenas, if necessary.

Third, BNLfood cites several cases from other federal jurisdictions in support of the proposition that the delivery address need not affect the enforceability of a subpoena under *Rule 45(a)(2)*. However, the cases BNLfood relies upon addressed situations where the documents to be produced were located within the district of the issuing court, but the address for delivery was in another jurisdiction. *See, e.g., City of St. Petersburg v. Total Containment, Inc., Misc. Case No. 07-191, 2008 U.S. Dist. LEXIS 36735, 2008 WL 1995298 (E.D. Pa. May 5, 2008)* [*6] (determining that subpoena issued from E.D. Pa. for documents located in E.D. Pa. to be produced in Nashville, Tennessee was valid); *Managed Care Solutions, Inc. v. Essent Healthcare, Inc., No. 09-60351-CIV, 2010 U.S. Dist. LEXIS 97558, 2010 WL 3419420, *2 (S.D. Fla. Aug. 27, 2010)* (determining that subpoena issued from the Southern District of Alabama for documents located within that district was proper); *Morris v. Sequa Corp., 275 F.R.D. 562, 565-66 (N.D. Ala. 2011)* (noting that defendant withdrew argument that subpoenas were issued from the wrong court where the subpoenas were issued in the districts where the documents were located); *Highland Tank & Mfg. Co. v. PS Int'l, Inc., 227 F.R.D. 374, 380-81 (W.D. Pa. 2005)* ("district court cannot issue a subpoena . . . to a non-party for the production of documents located in another district"). [4] Those cases do not assist BNLfood, because the documents sought here are those in the possession, custody, and control of Mr. Greubel, who lives and works in Switzerland, and DNP Switzerland, a Swiss company. BNLfood posits that, in addition to the documents from Switzerland, it seeks documents "in and accessible from Maryland, where DNP now exercises control over Martek/DNP [*7] LLC." Pl. Reply at 6. However, documents in the possession of Martek have already been requested through party discovery, and a subpoena to DNP LLC recently has been enforced by a federal court in New York. [ECF No. 74-1]. BNLfood

2012 U.S. Dist. LEXIS 104941, *

has not established that Mr. Greubel or DNP Switzerland have control over any documents in Maryland that have not already been subject to other discovery mechanisms. [5] In contrast, it appears that the subpoenas, issued in Maryland, primarily require documents currently located in Switzerland to be produced in Washington, D.C. *Rule 45(a)(2)* does not allow such reach.

> 4    BNLfood also cited two other cases that support an alternative reading of *Rule 45(a)(2)*, focusing not on the location of the documents but on the location of the requested delivery. *See Echostar Communs. Corp. v. News Corp. Ltd., 180 F.R.D. 391, 396 (D. Colo. 1998)* (invalidating subpoenas issued in Colorado where production was to be made in other states). *Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 412 (3d Cir. 2004)* (determining that *45(a)(2)* refers to place where documents are to be delivered, not where they are located). BNLfood's subpoenas are equally deficient under that alternative [*8] reading, because the location of the requested delivery is Washington, D.C., not Maryland.
>
> 5    This Court expresses no opinion as to whether documents in Mr. Greubel's possession fall within the scope of BNLfood's discovery requests to Martek. *See* Pl. Mot. at 4. This ruling is limited to the validity of the subpoenas.

BNLfood's fourth argument for upholding its subpoenas relies on courts' general reluctance to quash subpoenas. This Court's ruling does not quash the subpoenas. Instead, it holds that the subpoenas were invalidly issued, and therefore declines to compel compliance. BNLfood requests that this Court modify the subpoenas to change the address for delivery from Washington, D.C. to an address in Maryland. *Fed. R. Civ. P. 45(a)(3)* permits this Court to quash or modify subpoenas for sev-

eral enumerated reasons, none of which are applicable to this case. [6] BNLfood cites no cases in which a court determined that a subpoena was invalidly issued, and then permitted modification of the invalid subpoena. In fact, this Court appears to lack jurisdiction to modify BNLfood's subpoenas, which are facially invalid. *See, e.g., Small v. Ramsey, No. 1:10cv121, 2011 U.S. Dist. LEXIS 28951, 2011 WL 1044659 (N.D.W.Va. March 21, 2011)* [*9] (determining that it lacked jurisdiction to enforce a subpoena invalidly issued to a nonparty located in another state) (citing *Kupritz v. Savannah College of Art & Design, 155 F.R.D. 84, 88 (E.D. Pa. 1994)*).

> 6    For example, *Rule 45(c)(3)(A)* mandates that a subpoena be quashed or modified if it fails to allow reasonable time for compliance, requires extensive travel, requires disclosure of privileged information, or subjects a person to undue burden. *Rule 45(c)(3)(B)* permits the Court to quash or modify a subpoena that would require disclosure of sensitive commercial information, disclosure of certain information from an unretained expert, or imposes substantial travel expense on a nonparty.

Because the subpoenas were invalidly issued, this Court need not reach the issues regarding the propriety of service on Mr. Greubel and DNP Switzerland. For the reasons set forth above, BNLfood's Motion to Compel Richard Greubel and DSM Nutritional Products Ltd. [ECF No. 53] is DENIED.

SO ORDERED.

Dated: July 27, 2012

/s/ Stephanie A. Gallagher

United States Magistrate Judge



**In re: AIR CRASH DISASTER AT SIOUX CITY, IOWA, On July 19, 1989**

**Master File No. MDL-817, No. 89 C 8082, This Document Relates to All Cases**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1991 U.S. Dist. LEXIS 10372*

**July 25, 1991, Decided**
**July 26, 1991, Docketed**

**JUDGES:** [*1] Suzanne B. Conlon, United States District Judge.

**OPINION BY:** CONLON

**OPINION**

*MEMORANDUM OPINION AND ORDER*

This multidistrict litigation involves claims for personal injury and wrongful death arising out of the crash of United Airlines Flight 232 at Sioux City, Iowa, on July 19, 1989. Plaintiffs wish to create a videotape depiction of the sequence of events experienced by the passengers on board the aircraft during the forty-four minutes between loss of the number 2 engine and the subsequent crash. Plaintiffs contend that this reconstruction will assist the jury in determining fair and reasonable compensatory damages for pre-crash fear and pain and suffering. In order to recreate the sound of the engines for each passenger during this time period, plaintiffs seek to use one of United's DC 10-10 flights to re-enact the manipulation of the remaining engines on flight 232. Plaintiffs asked United to provide a non-revenue training or post-maintenance flight for this purpose. United rejected plaintiffs' request, stating that United generally does not conduct non-revenue training flights in DC-10-10 aircraft, and that United has a policy against non-employees being on board non-revenue flights. Doubting [*2] the veracity of United's explanation, plaintiffs now move to compel United to disclose the following information: (1) all records of non-revenue flights involving DC 10-10 aircraft within the last six months; (2) the source of United's alleged policy concerning the presence of non-employees on board non-revenue flights; and (3) a copy of any rule, regulation, condition or insurance requirement that may serve as the motivation behind United's alleged policy. Plaintiffs further seek to take the depositions of United witnesses who have knowledge about the frequency of non-revenue flights for DC 10-10 aircraft, and the way in which such flights are conducted.

Under *Fed.R.Civ.P. 26(b)(1)*, plaintiffs may obtain discovery of the requested information if it "appears reasonably calculated to lead to the discovery of admissible evidence." Plaintiffs represent that they would use the requested information to create a proposal for testing the DC 10-10 without unduly burdening United. United correctly observes that the information plaintiffs seek is only relevant and discoverable if the court first determines that plaintiffs may use a United DC 10-10 aircraft for conducting the tests contemplated [*3] by plaintiffs. United contends that it is not required to provide plaintiffs with a United aircraft and flight crew who will fly the plane and simulate the conditions of flight 232 according to plaintiffs' instructions.

Plaintiffs argue that they may conduct the contemplated re-enactment under *Fed.R.Civ.P. 34*. Under *Rule 34(a)(1)*, a party may request another party to inspect and test "any tangible things which constitute or contain matters within the scope of *Rule 26(b)* and which are in the possession, custody or control of the party upon whom the request is served." In addition, the Notes of the Advisory Committee on *Rule 34* state:

The inclusion of testing and sampling of tangible things and objects. . .reflects a need frequently encountered by parties in preparation for trial. If the operation of a particular machine is the basis of a claim for negligent

injury, it will often be necessary to test its operating parts or to sample and test the products it is producing.

*Fed.R.Civ.P. 34*, Notes of Advisory Committee on Rules, 1970 Amendment. Plaintiffs quote this portion of the Advisory Committee's Notes in support of their request to test United's 10-10 aircraft. However, the Advisory [*4] Committee Notes to *Rule 34* also state that "the courts have ample power under *Rule 26(c)* to protect respondent against undue burden or expense, either by restricting discovery or requiring that the discovering party pay costs." [1] Id. Because United opposes plaintiffs' proposed testing of its DC 10-10 aircraft, the court must determine whether the proposed testing is permissible under *Fed.R.Civ.P. 26(c)*. See *Ostrander v. Cone Mills, Inc., 119 F.R.D. 417, 419 (D.Minn. 1988)* (when production of evidence under *Rule 34* is resisted, *Rule 26(c)* provides the standard for denial or limitation of the request).

> 1   *Rule 26(c)* confers broad jurisdiction upon a district court:
>
> > for good cause shown,. . .[to] make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

While *Rule 34* clearly contemplates plaintiffs' ability to inspect and conduct tests on United's DC 10-10, United points out that plaintiffs' request exceeds the scope [*5] of *Rule 34*. Plaintiffs essentially request that United supply its own flight crew and aircraft to carry out in-flight tests devised by plaintiffs. This request is unduly burdensome and may indeed prove dangerous. *Rule 34* does not require a party to conduct tests on machinery according to the opposing party's specifications. *Sperberg v. Firestone Tire & Rubber Co., 61 F.R.D. 80, 83 (N.D.Ohio 1973)* ("each party is free to prepare and perform tests in the manner he deems best, but he cannot compel another party to perform the same tests").

The court addressed a similar issue in a memorandum opinion and order dated May 24, 1990 ("the May 24, 1990 order"). In that opinion, the court granted United's motion for a protective order prohibiting plaintiffs from taking depositions of the flight crew in a DC-10

simulator. In so ruling, the court observed that "while forcing the pilot of the aircraft to recreate the events leading to the air crash has theatrical value, it also has many potential pitfalls." May 24, 1990 order at 2. Likewise, plaintiffs' present proposal to conduct an in-flight re-enactment of the circumstances leading up to flight 232's crash has many potential [*6] disadvantages. The proposed simulation may subject United's flight crew to danger, as it would require the crew to alternately shut down certain engines and manipulate the throttles to achieve the crescendo of engine sounds allegedly experienced by the passengers. Moreover, the simulation plaintiffs propose would not be used to prove liability. Instead, plaintiffs want to recreate the sounds emitted from the engines so that plaintiffs may more accurately portray the experience of the passengers in order to prove damages for pain and suffering. The flight simulation is not essential to plaintiffs' cases; plaintiffs may use other evidence to explain to the jury the emotional distress of the passengers. In short, nothing in the Federal Rules of Civil Procedure expressly requires United to make available its own DC 10-10 aircraft and flight crew so that plaintiffs may direct United's flight crew to re-enact the experience of flight 232.

Furthermore, United submits a list of three airline companies that purportedly lease, rent or charter DC-10 aircraft. United points out that it would be less burdensome and less expensive for plaintiffs to lease an aircraft from one of these non-party [*7] entities to perform their own flight tests. Because there is a less burdensome alternative to plaintiffs' proposed re-enactment, and because *Rule 34* does not extend to this type of testing, the court shall not require United to supply its DC 10-10 aircraft and flight crew to conduct its tests. In light of this determination, plaintiffs' motion to compel the production of documents and deposition witnesses pertaining to United's non-revenue flight schedules for DC 10-10 aircraft is denied, because this information would not lead to the discovery of relevant admissible evidence. *Fed.R.Civ.P. 26(b)(1)*.

*CONCLUSION*

Plaintiffs' motion to compel is denied.

 LexisNexis®

1 of 99 DOCUMENTS

**In the Matter of the Application for an Order Quashing Deposition Subpoenas, dated July 16, 2002, served upon TAKAO SHIDA, TAKAO SASAKI, and SHUYA KOJIMA, Non-Party Movants. THE NISSAN FIRE & MARINE INSURANCE COMPANY, LTD., a foreign corporation, Plaintiff, -against- FORTRESS RE, INC., a North Carolina corporation, MAURICE D. SABBAH, ZMIRA SABBAH, LEEOR B. SABBAH, and KENNETH H. KORNFELD, Defendants.**

**Misc. No. M8-85, 1:02CV00054 (M.D.N.C.)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2002 U.S. Dist. LEXIS 14928*

**August 13, 2002, Decided**
**August 14, 2002, Filed**

**DISPOSITION:**    [*1] Motion to quash the subpoena served upon Sasaki was granted. Motion for sanctions pursuant to *Fed. R. Civ. P. 45(c)(1)* was denied.

**COUNSEL:** Thomas F. Bush, Lovells, Chicago, IL, for Non-Party Movants.

Marc J. Gottridge, Joseph T. McCullough IV, and Nazanin Lankarani, Lovells, of counsel, New York, NY, for Non-Party Movants.

Jack B. Gordon, Rita M. Odin, of counsel, Fried, Frank, Harris, Shriver & Jacobson, New York, NY, for Respondents.

**JUDGES:** GERARD E. LYNCH, United States District Judge.

**OPINION BY:** GERARD E. LYNCH

**OPINION**

*OPINION AND ORDER*

GERARD E. LYNCH, *District Judge:*

Non-party movants Takao Shida, Takao Sasaki, and Shuya Kojima seek (1) an order pursuant to *Fed. R. Civ. P. 45(c)(3)(A)(ii) & (iv)* quashing subpoenas issued in this judicial district and served on July 16, 2002, requiring their personal appearance for depositions in New York on August 15 and 16, 2002, and (2) an order pursuant to *Fed. R. Civ. P. 45(c)(1)* imposing sanctions upon respondents Fortress Re, Inc., Maurice D. Sabbah, Zmira Sabbah, Leeor B. Sabbah, Kenneth H. Kornfeld, and their counsel, Fried, Frank, Harris, Shriver & Jacobson, LLP, for breaching their duty to avoid imposing undue burden or expense upon [*2] the subpoena recipients. The subpoenas have been issued in connection with an action pending before the U.S. District Court for the Middle District of North Carolina, *Nissan Fire & Marine Insurance Co., Ltd. v. Fortress Re, Inc.,* No. 1:02-CV-00054 (M.D.N.C.).

Based on representations made by counsel for the movants at oral argument that Shida and Kojima have no knowledge of any facts relevant to the North Carolina action, counsel for respondents has agreed to withdraw the subpoenas served upon those two movants, leaving before the Court only the motion to quash as to the subpoena served upon Sasaki and the motion for sanctions. For the reasons that follow, the motion to quash will be granted, but the motion for sanctions will be denied.

BACKGROUND

The action pending in North Carolina concerns a dispute between plaintiff Nissan Fire and Marine Insurance Co., Ltd. ("Nissan"), a Japanese corporation, and defendants Fortress Re, Inc. ("Fortress Re"), a reinsur-

ance underwriting manager based in North Carolina, and the individual defendants, who are all directors, officers, or shareholders of Fortress Re. (Drew Decl. PP 3--4.) Since 1972, Fortress Re has served as managing underwriting [*3] agent for a group of several Japanese insurance companies, which in recent years has included Nissan, Taisei Fire and Marine Insurance Co., Ltd. ("Taisei"), and Aioi Insurance Co., Ltd. ("Aioi"). (Drew Decl. PP 4--5.) All three of these Japanese companies are now involved in disputes with Fortress Re arising from the termination of their respective management agreements with Fortress Re. (Drew Decl. PP 8--9.) Nissan initiated the North Carolina action and an arbitration proceeding against Fortress Re and the individual defendants, alleging, *inter alia,* that the respondents engaged in fraud and misrepresentation when disclosing information to Nissan. Fortress Re has served Nissan with a counter-demand for arbitration and has served Aioi with a separate demand for arbitration. (Drew Decl. P 9; Juceam Decl. PP 2--3.) Taisei and Aioi are not parties to the North Carolina action filed by Nissan, but respondents maintain that testimony from Aioi's officers and employees is relevant to Fortress Re's defense of the North Carolina action because a significant issue in that dispute concerns whether Nissan had knowledge of Fortress Re's practices and understood its disclosures. According [*4] to respondents, Nissan, Taisei, and Aioi received substantially identical information from the respondents and discussed that information amongst themselves, making Aioi employees a source of substantial, material evidence to their defense of the North Carolina action. (Drew Decl. P 4; Juceam Decl. P 4.)

Sasaki is a citizen and resident of Japan and is General Manager of Aioi's Reinsurance Department. While Aioi has a New York office, Sasaki maintains that he does not regularly work out of that office and has only come to New York for business four times within the past five years. [1] (Sasaki Decl. PP 2, 4--5.) One of those instances, however, was a trip to New York to attend a meeting held with representatives of Fortress Re on July 16, 2002, for the purpose of discussing Aioi's own potential claims against Fortress Re and the possibility of settling their disputes. Shida and Kojima accompanied Sasaki to that meeting, which was held in New York, rather than North Carolina, at the request of the three Aioi employees and for their convenience. (Juceam Decl. PP 6--8; Sasaki Decl. PP 6--7; Kojima Decl. PP 6--7; Shida Decl. PP 6--7.) The meeting did not, however, result in any settlement [*5] of the dispute between Fortress Re and Aioi, and at the end of the meeting, counsel for Fortress Re asked counsel for the movants to accept service of subpoenas seeking their appearance for depositions in New York on August 15 and 16, 2002. While counsel for the movants vigorously objected to service of the subpoenas, the movants ultimately accepted service under

protest, without agreeing that service was proper and expressly reserving their rights to challenge those subpoenas. (McCullough Decl. P 9; Sasaki Decl. P 9; Kojima Decl. P 9; Shida Decl. P 9; Juceam Decl. PP 9--10.)

1 By contrast, respondents maintain that Sasaki has traveled to North Carolina at least six times within the past ten months for the purpose of discussing Aioi's business with Fortress Re. (Drew Decl. P 13.)

Subsequent attempts to work out an amicable resolution concerning the movants' depositions were unsuccessful. (Juceam Decl. PP 11--12.) This motion followed and was heard before this Court as a miscellaneous application on August 8, 2002.

[*6]  DISCUSSION

I. Motion to Quash Subpoena

Under *Rule 45(a)(2) of the Federal Rules of Civil Procedure,* a subpoena for attendance at a deposition must issue from the court for the district in which the deposition is to be taken. *Fed. R. Civ. P. 45(a)(2). Rule 45(b)(2)* authorizes service of such a subpoena (1) "at any place within the district of the court by which it is issued," (2) at any place outside the district "that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena," or (3) "at any place within the state" if state law authorizes statewide service of a subpoena "issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena." *Fed. R. Civ. P. 45(b)(2).*

Service of the subpoenas in this case properly complied with both of these requirements, since the subpoenas sought the movants' appearance for depositions in New York and were personally served upon the movants within this district. While the movants protests that service upon the movants was improper because they were "ambushed" with service after being "induced" [*7] by the respondents to come all the way from Japan to New York for the express and sole purpose of engaging in settlement negotiations with Fortress Re (Movants Br. 3--4), the Court finds no basis to conclude that the movants were in any way privileged or immunized -- whether on account of the transient nature of their sojourn to New York or the purpose for which they made that trip -- from service of process in this judicial district. *See, e.g., Kadic v. Karadzic, 70 F.3d 232, 246--47* (2d Cir. 1995) (upholding exercise of personal jurisdiction over citizen of foreign country visiting New York for purpose of addressing United Nations). The movants fully "knew, or should have known, that by" attending the meeting in New York, they were also "risking expo-

sure to personal jurisdiction in New York." *First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16, 20--21 (2d Cir. 1998)* (citing *Burnham v. Superior Court, 495 U.S. 604, 635, 109 L. Ed. 2d 631, 110 S. Ct. 2105 (1990)).* Given that an individual may be subjected to liability by the exercise of so-called "tag" jurisdiction far from home without the Due Process Clause being violated, there [*8] is no reason why service of a subpoena under *Rule 45(b)(2),* "which is simply a discovery mechanism and does not subject a person to liability, requires more." *In re Edelman, 295 F.3d 171, 179 (2d Cir. 2002); see First Am. Corp., 154 F.3d at 20.* As for the "ambush" argument, while the movants make much rhetorically of this claim, they in fact make no legal argument, and cite no authority, for the proposition that persons engaged in business discussions relating to the settlement of a dispute may not be served with process. Actual service of the subpoenas upon the movants, therefore, itself raises no legal question.

However, the authority to serve a subpoena under *Rule 45(b)(2)* also is explicitly made "subject to the provisions of" *Rule 45(c)(3)(A)(ii),* which provides that upon a timely motion,

> the court by which a subpoena was issued *shall* quash *or* modify the subpoena if it . . . requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person.

*Fed. R. Civ. P. 45(c)(3)(A)(ii)* (emphasis added). [*9] The purpose of the territorial limitation "is to protect [non-party] witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest." *Edelman, 295 F.3d at 178; see Price Waterhouse LLP v. First Am. Corp., 182 F.R.D. 56, 63 (S.D.N.Y. 1998).* Non-party witnesses also are protected from being held in contempt for failure to obey subpoenas that purport to require them to attend depositions at places outside the territorial limits of *Rule 45(c)(3)(A)(ii). Fed. R. Civ. P. 45(e).* [2]

> 2    Arguably, given *Rule 45(c)(3)(A)(ii),* the movants could have simply ignored the subpoenas, rather than moving to quash them, without fearing any contempt sanction from this Court on account of their noncompliance. *See Fed. R. Civ. P. 45(e).* Understandably and appropriately, however, they have sought to have their obligations adjudicated in advance, rather than defying the subpoenas and asserting defenses in a contempt proceeding.

It is undisputed [*10] that Sasaki, who lives and works in Japan, would be required to travel more than 100 miles from their place of residence and employment in order to be deposed in New York. It also seems perfectly clear that Sasaki does not "regularly transact[] business in person" in New York to the extent contemplated by *Rule 45(c)(3)(A)(ii).* [3] *See Regents of University of California v. Kohne, 166 F.R.D. 463, 465 (S.D.Cal. 1996)* (under *Fed. R. Civ. P. 45(c)(3)(A)(ii),* "'regularly' does not mean ten times in seven years").

> 3    Respondents emphasize Sasaki's extensive contacts in North Carolina in connection with Aioi's business relationship with Fortress Re, noting that he made at least six trips to North Carolina within the past ten months. (Drew Decl. P 13.) While those contacts may or may not support the conclusion that Sasaki "regularly transacts business in person" in North Carolina under *Rule 45(c)(3)(A)(ii),* they are simply irrelevant to whether he does so in New York.

What is not altogether clear, however, [*11] is the effect that should be given to the cross-referencing language making *Rule 45(b)(2)* "subject to" the provisions of *Rule 45(c)(3)(A)(ii),* for that language is, to say the least, somewhat ambiguous. *See David B. Siegel, Federal Subpoena Practice Under the New Rule 45 of the Federal Rules of Civil Procedure, 139 F.R.D. 197, 209 (1992)* ("In some situations when one consults *Rule 45* for guidance about the territorial reach of a subpoena and starts to hop back and forth among [*Rule 45's* various subsections], the rule comes off like a Tower of Babel, an inferno with shrill voices jabbering simultaneously in a confusion of tongues."). Sasaki argues that a subpoena that transgresses the territorial limitations set forth in *Rule 45(c)(3)(A)(ii)* is invalid *ab initio,* and accordingly that the Court *must* quash the subpoena as beyond the authority conferred in *Rule 45(b)(2)* to serve it. By contrast, respondents maintain that the cross-referencing language making *Rule 45(b)(2)* "subject to" the provisions of *Rule 45(c)(3)(A)(ii)* does not *automatically* render a subpoena invalid if it exceeds those territorial limitations, but instead vests discretion in the [*12] district court, as provided in the latter rule, either to quash *or* modify the subpoena when presented with a timely motion for relief by the subpoena recipient. On respondents' reading of *Rule 45(b)(2),* the court still must do *something* when faced with the circumstances described in *Rule 45(c)(3)(A)(ii)* and presented with a timely motion -- given the mandatory language of the rule, which states that the court "*shall* quash or modify" the subpoena, the court cannot simply let such a subpoena stand as issued. At the same time, quashing the subpoena is not the only option available to the court. Rather, at its discretion, the court is permitted either to quash *or* to modify the sub-

2002 U.S. Dist. LEXIS 14928, *

poena as the circumstances warrant. On this view, *Rule 45* permits a party to serve a subpoena that cannot be enforced according to its terms, "subject to" later modification (or quashing) of the subpoena.

The parties draw our attention to only a handful of cases involving circumstances akin to those presented here. For example, in *Matthias Jans & Assocs., Ltd. v. Dropic, 2001 U.S. Dist. LEXIS 4841*, No. 01- MC-26, 2001 WL 1661473 (W.D. Mich. Apr. 9, 2001), the court concluded that the movant was entitled to [\*13] relief from a subpoena issued in Western District of Michigan and served upon a resident of that district in connection with an action pending in the Northern District of Ohio, since the subpoena sought the appearance of the movant for a deposition in Cleveland, Ohio -- a location outside the territorial restrictions set forth in *Rule 45(c)(3)(A)(ii)*. Rather than quashing the subpoena altogether, however, the court ordered that the subpoena be modified to require its recipient to appear for the deposition "at a place to be agreed upon by all counsel, no greater than 100 miles" from her residence. *Id.* at \*3, *2001 U.S. Dist. LEXIS 4841*. Similarly, in *Comm-Tract Corp. v. Northern Telecom, Inc., 168 F.R.D. 4, 7 (D.Mass. 1996)*, the court modified a subpoena issued and served in Massachusetts upon a non-party witness who, by the time scheduled for his appearance at trial, was to have commenced work on a three-year expatriate assignment in Hong Kong, concluding that the "just result" was to modify the subpoena to require the witness to submit to a videotape deposition in Hong Kong. By contrast, in *St. Paul Fire & Marine Insurance Co. v. Royal Insurance Co., 1993 U.S. Dist. LEXIS 9415*, No. 91 Civ. 6151 (PNL), 1993 WL 267347, [\*14] (S.D.N.Y. July 12, 1993), the court stated that "*Rule 45(c)(3)(A)(ii)* appears to *require* the quashing of a subpoena if it requires a person who is neither a party nor an officer of a party to travel to a place more than 100 miles from his or her residence or place of business to testify," and on that basis quashed the subpoena. *Id.* at \*1, *1993 U.S. Dist. LEXIS 9415* (emphasis added); *cf. Price Waterhouse LLP v. First Am. Corp., 182 F.R.D. 56, 63--64 (S.D.N.Y. 1998)* (concluding that the court could not modify a subpoena that sought the appearance of residents of England for a deposition in New York to provide instead that the deposition take place in London because such a modification would "create a subpoena that *does not issue* from 'the district in which the deposition is to be taken.'" in violation of *Rule 45(a)(2)*).

Plausible policy arguments support both readings. It seems peculiar to permit a party to serve a subpoena that is unenforceable according to its terms. On the other hand, it is not uncommon that non-jurisdictional defects may be waived if they are not asserted, and the rule may contemplate the possibility of securing jurisdiction over a

witness who is otherwise difficult [\*15] to locate or serve, leaving it to later court action -- if sought by the witness -- to achieve a fair result. Given that the rule expressly authorizes the Court to quash *or* modify the subpoena, it seems equally odd to conclude that the sensible results ordered by the courts in *Matthias Jans* and *Comm-Tract* were simply unauthorized by law.

Nevertheless, the Court need not resolve in this case whether *Rule 45(b)(2)* requires that a subpoena in violation of *Rule 45(c)(3)(A)(ii)* be quashed or confers discretion upon the court to modify such a subpoena. Assuming, without deciding, that *Rule 45(b)(2)* permits a court to modify a subpoena whose enforcement would violate *Rule 45(c)(3)(A)(ii)*, on the facts of this case the Court would in any event exercise its discretion to quash, rather than modify, the subpoena served upon Sasaki.

It is not clear that the Court can fashion a modification to the subpoena that would both satisfy the requirements of *Rule 45(c)(3)(A)(ii)* and be appropriate to the particular circumstances presented here. As already noted, even on respondents' interpretation of *Rule 45*, the Court cannot order Sasaki to appear for a deposition here in New York -- the [\*16] Court must either "quash or modify" that deposition. The only plausible modification that would bring the subpoena into compliance with *Rule 45(c)(3)(A)(ii)* would change the location of the deposition from New York to Tokyo. Were Sasaki a resident of another judicial district in the United States, that approach might seem an altogether sensible, appropriate, and straightforward exercise of this Court's discretion to "quash or modify" the subpoena. *See Matthias Jans, 2001 U.S. Dist. LEXIS 4841, 2001 WL 1661473*, at \*2--\*3.

In this case, however, modifying the subpoena to require attendance at a deposition in Japan would be a more complicated endeavor. Japanese law authorizes a deposition in Japan for use in U.S. courts only if (1) the witness or party is willing to be deposed, (2) the deposition takes place on U.S. consular premises, (3) a consular officer presides over that deposition, pursuant either to a letter rogatory issued by a U.S. court or to a court order (for example, under the All Writs Act, *28 U.S.C. § 1651*) that specifically authorizes a U.S. consular officer to take the deposition on notice, and each participant traveling from the United States to Japan to [\*17] participate in the deposition obtains a "deposition visa." Resp. Ex. C. (circular on obtaining evidence in Japan issued by U.S. Department of State); *see* Consular Convention and Protocol, Mar. 22, 1963, U.S.-Japan, art. 17(1)(e)(ii), 15 U.S.T. 768; *Fed. R. Civ. P. 28(b)*; *22 C.F.R. §§ 92.49--92.71.*[4] Respondents are perfectly aware of these procedures -- indeed, they characterize the burdens of these procedures as one of the reasons why the motion to quash should be denied, arguing that they are "not likely

2002 U.S. Dist. LEXIS 14928, *

to be able to obtain satisfactory discovery" from Sasaki unless he is deposed in the United States or, in respondents' paradoxical phrase, is "required to consent" to his deposition in Japan. (Resp. Br. 13.) It is not clear, however, that the authority granted in *Rule 45(c)(3)(A)(ii)* to modify a subpoena extends to the kinds of "modifications" that would be required to permit the subpoena to comply with these requirements by functioning as the equivalent of a letter rogatory or a court order authorizing a U.S. consular officer to take the deposition. Even less clear is how this Court would be able to modify the subpoena, as the respondents [*18] suggest, so as to "require" Sasaki to "consent" to his deposition in Japan. [5]

    4    Japan is not a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, 847 U.N.T.S. 231, and accordingly, the "letter of request" procedures under that convention are not available to the respondents.

    5    Tellingly, while the respondents argue vigorously that the Court has the authority to modify the subpoena served upon Sasaki, they finesse the question of what *particular* modifications the Court should make to that subpoena.

But even if such authority did exist under *Rule 45*, prudential, international comity-based considerations counsel that the Court refrain under the circumstances of this case. "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in [*19] a disadvantageous position." *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa, 482 U.S. 522, 546, 96 L. Ed. 2d 461, 107 S. Ct. 2542 (1987); see also In re Chase Manhattan Bank, 297 F.2d 611, 613 (2d Cir. 1962)* (modification of subpoena directing production of documents located in Panama is appropriate where compliance would necessitate violation of Panamanian law); *Ings v. Ferguson, 282 F.2d 149, 152 (2d Cir. 1960)* ("Upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures."); *Laker Airways, Ltd. v. Pan American World Airways, 607 F. Supp. 324, 326 (S.D.N.Y. 1985)* (quashing subpoenas seeking depositions of non-party witnesses where service of the subpoenas in New York constitutes "a transparent attempt to circumvent the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters"). The Court in the best position to exercise such supervision is not [*20] this Court, which merely has

jurisdiction over the subpoena issued on its behalf, but the district court in North Carolina before which the underlying action itself is pending. This Court may not transfer the instant motion to quash to the North Carolina court, since "only the issuing court has the power to act on its subpoenas." *In re Sealed Case, 329 U.S. App. D.C. 374, 141 F.3d 337, 341 (D.C. Cir. 1998)* (reversing D.C. district court's transfer of motion to quash subpoena and cross-motion to compel to district court in Arkansas). However, the respondents remain perfectly free to seek from the North Carolina court a letter rogatory or an order authorizing consular officials to preside over the deposition of Sasaki and any other witnesses in Japan whose testimony might be relevant to this action.

If these various considerations counseling against modification of the subpoena might be overcome in some unusual circumstances by a compelling need of a party to obtain discovery, this case presents no such circumstances. As an officer of Aioi, Saskai has no direct knowledge of the facts at issue between Nissan and Fortress Re in the pending litigation; the testimony he could provide would at [*21] best constitute indirect evidence on the issues in that case. Nor is it clear that Sasaki personally is the best source of information about Fortress Re's contacts with Aioi; neither party to this motion has addressed the potential for serving a Rule 30(b)(6) deposition or other discovery demand on Aioi in North Carolina. As for Fortress Re's dispute with Aioi, that dispute is apparently under arbitration, and the arbitrators will have ample power to determine what discovery is necessary in that matter.

Accordingly, it is not necessary to resolve the various questions raised by this motion concerning the interpretation of *Rule 45*. "When it is necessary to seek evidence abroad," prudential considerations of international comity require the district court "to supervise pretrial proceedings particularly closely to prevent discovery abuses." *Aerospatiale, 482 U.S. at 546*. This Court is ill placed to play that supervisory role, given its limited knowledge of the underlying case. Thus, the motion to quash will be granted without prejudice to an application by the respondents to that court for a letter rogatory or other appropriate order relating to discovery from Aioi or [*22] Sasaki.

## II. Motion for Sanctions

*Rule 45(c)(1) of the Federal Rules of Civil Procedure* obligates a party or attorney responsible for the issuance and service of a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena," and requires the court on whose behalf the subpoena is issued to "enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but

is not limited to, lost earnings and a reasonable attorney's fee." *Fed. R. Civ. P. 45(c)(1)*.

Sanctions are not appropriate under the circumstances of this case. Issuance and service of the subpoenas upon the movants was not itself in any way improper, since the respondents had a good faith basis for believing that the movants' testimony would be relevant to the North Carolina action, and as the above discussion shows, there are legitimate questions concerning the effect of *Rule 45(c)(3)(A)(ii)* on this case. Moreover, subsequent to the issuance of the subpoenas, respondents and their counsel have negotiated in good faith to make any accommodations necessary with respect to time, location, or both in order to [*23] ease the potential burden that appearance for the deposition would present to the movants. While the movants argue that "an attempt to enforce a subpoena that violates the mandatory provisions of *Rule 45(c)(3)* is a *per se* violation of the *Rule 45(c)(1)* duty," Movants Br. 7 (quoting *Matthias Jans & Assocs., 2001 U.S. Dist. LEXIS 4841, 2001 WL 1661473,* at *3), the Court cannot conclude that at the time the subpoenas were served, the respondents lacked a good faith belief that the subpoenas were properly served. The various questions concerning the proper interpretation of the territorial restrictions set forth in *Rule 45(c)(3)(A)(ii)* have not yet been addressed by many courts, let alone

definitively resolved. It would seem appropriate, therefore, that the difficult "questions about [the rule's] territorial range . . . should have definitive answers from decisional law before attorneys who must guess at the answers start getting sanctioned for guessing wrong." Siegel, *supra,* 139 F.R.D. at 227--28.

Since the respondents have heeded their obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena," *Fed. R. Civ. P. 45(c)(1)*, the motion [*24] for sanctions will be denied.

CONCLUSION

For the foregoing reasons, the motion to quash the subpoena served upon Sasaki is GRANTED. The motion for sanctions pursuant to *Fed. R. Civ. P. 45(c)(1)* is DENIED.

SO ORDERED.

Dated: New York, New York

August 13, 2002

GERARD E. LYNCH

United States District Judge